IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:25-cr-284 (RDA) |
| | ) | |
| WARITH DEEN MUHAMMAD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the Government's Motion to Revoke Bond (Dkt. 49). Considering the Motion, Probation's Notice of Apparent Violation, as well as the Probation Officer's presentation and arguments raised by counsel at the hearing held before this Court on December 10, 2025, this Court GRANTS the Government's Motion, REVOKES Defendant's bond and order of release, and ORDERS that Defendant be detained pending trial for the reasons that follow.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2025, a grand jury sitting in the Eastern District of Virginia returned a nine-count indictment charging Defendant with seven counts of wire fraud (18 U.S.C. § 1343) and two counts of Travel Act violations (18 U.S.C. § 2314). The indictment alleges that Defendant used a purported precious metal business to defraud seven investors of approximately $422,500. On October 15, 2025, Defendant appeared before Magistrate Judge Anderson for an Initial Appearance. On that date, Defendant was ordered detained pending a Detention Hearing and remanded to the custody of the U.S. Marshals Service.

In preparation for the Detention Hearing, Defendant reported to Pretrial Services that he earns approximately $25,000 gross per month but has only $12 in his savings account because he

recently purchased more supplies for his business.  Defendant reported that he pays $7,500 in rent, among other monthly costs, and had recently applied for a new passport at the time of the Pretrial Services Report.

Defendant further reported that his wife, Maria Muhammad ("Ms. Muhammad"), was a homemaker and that Defendant was the sole provider for his family.  Ms. Muhammad corroborated this statement and indicated that she had no knowledge of Defendant's finances.  Ms. Muhammad also initially claimed that she did not even know the name of Defendant's company; however, when asked how she did not recall the name of the company if Defendant had owned said company for fourteen years, she later confirmed the name of the company.

As relevant here, in late summer and fall of this year, Defendant was also previously before this Court in a separate action.  There, Defendant twice failed to appear before this Court, failed to appear before a grand jury, and was held in civil contempt for failure to comply with a grand jury subpoena.  Defendant also has several prior failures to appear in his record from 2007, 2009, 2013, and 2018.  Defendant's wife, Maria Muhammad ("Ms. Muhammad"), was also arrested in 2018 for failure to appear.  Three money judgements have also previously been entered against Defendant—and in two of those instances were entered against Ms. Muhammad as well.  Most recently, in July 2025, a judgment in the amount of $89,000 was entered against Defendant and Ms. Muhammad for failure to pay rent.  Other judgments were previously entered in the amounts of $18,966.71 (2018) and $14,000 (2023).

On October 17, 2025, Defendant appeared before Magistrate Judge Porter for his Detention Hearing.  Judge Porter heard evidence and argument and, at the conclusion of the hearing, ordered Defendant released on a $250,000.00 cash bond with the following special conditions (emphasis added):

1. Submit to supervision by and report for supervision to the Pretrial Services Office;
2. **<u>Continue or actively seek employment. Must be preapproved by Pretrial. No self- employment</u>**;
3. Surrender any passport to Pretrial Services;
4. Not obtain a passport or other international travel document;
5. Do not depart the Washington D.C. metropolitan area without the prior approval of Pretrial Services or the Court;
6. **<u>Avoid all contact, directly or indirectly with any person who is or may be a victim or witness in the investigation or prosecution. Including: Co-conspirators related to the instant offense unless in the presence of counsel or Pretrial Services</u>**;
7. Participate in the following location restriction program and comply with its requirements as directed: CURFEW: You are restricted to your residence everyday as directed by the pretrial services office or supervising officer;
8. Submit to the following location monitoring technology and comply with its requirements as directed: GPS;
9. Do not open any new lines of credit or loans without prior approval of Pretrial Services or the Court;
10. Notify any current or future clients and/or employer of the nature of the charged offense if deemed necessary by Pretrial Services;
11. Provide Pretrial Services access to all financial records as requested;
12. **<u>Release to and reside in the third-party custody of Maria Muhammad</u>**; and
13. Must post a $250,000.00 cash bond (secured).

Defendant was remanded to the custody of the U.S. Marshals Service until these conditions could be met.

On October 21, 2025, Ms. Muhammad (using her maiden name, "Maria Bonilla") sold three gold one-ounce eagles for $12,000 to a company that is alleged to have been one of Defendant's leading precious metal suppliers throughout the instant alleged fraud ("Precious Metal Company 1").[1] Ms. Muhammad told Precious Metal Company 1 that she was now running Defendant's business.

---

[1] The Government provided records related to Precious Metal Company 1 to defense counsel in discovery, as well as memoranda of interviews of employees of Precious Metal Company 1. Furthermore, the Government subpoenaed the owner of Precious Metal Company 1 to testify at trial, and the Government anticipates that it may have to call other witnesses, including possibly B.W. (discussed *infra*).

On October 22, 2025, an unopposed emergency motion was filed and granted by this Court to modify the conditions of Defendant's release to allow Defendant to post a $250,000 surety bond. The same day, Defendant's passport was surrendered to Pretrial Services.

On October 23, 2025, Defendant was enrolled in the Location Monitoring Program utilizing GPS technology and was released from the custody of the U.S. Marshals Service. The conditions of release were reviewed with him and his third-party custodian, Ms. Muhammad. At that time, the Probation Officer discussed with Defendant his plans for seeking employment. Defendant and Ms. Muhammad inquired whether Defendant could obtain employment working for Ms. Muhammad. The Probation Officer advised them that Ms. Muhammad would need to provide specific details of any proposed employment for review and approval. Defendant then asked what would occur if he chose not to work. The Probation Officer stated that, because employment is a condition of his release, his attorney would need to file a motion with the Court to have the condition removed, otherwise he would be required to secure employment.

On November 3, 2025, Ms. Muhammad visited Precious Metal Company 1 and sold a silver bar for $4,705. Later that day, Ms. Muhammad texted B.W., the son of the owner and a key employee of Precious Metal Company 1, writing, "Hello [B.W.] This is Maria Muhammad. I was just at your store. I wanted to touch base on our gold and platinum deal. The client had to push back till the 18th due to conflict in their schedule. Just wanted to make sure you will have the supply ready." Ms. Muhammad and B.W. continued to text over the next few weeks regarding selling and trading precious metals for Ms. Muhammad's clients. Ms. Muhammad provided multiple photos indicating that she was in possession of a sizeable quantity of precious metals. The owner of Precious Metal Company 1 estimated that Ms. Muhammad was trying to sell to Precious Metal Company 1 over $100,000 or maybe even $150,000 in precious metal. On

November 14, 2025, Ms. Muhammad sold two gold half-ounce eagles to Precious Metal Company 1 for $4,100.

During this time in approximately early November, shortly after B.W. declined to engage in a trade requested by Ms. Muhammad, Defendant himself texted the owner of Precious Metal Company 1 and requested that the owner contact Defendant.  The owner declined to do so because he had been subpoenaed to testify at Defendant's trial.

On November 17, 2025, the Probation Officer met with Defendant at his home for a scheduled home contact.  During this contact, the Probation Officer inquired about Defendant's job search activity and plans for employment.  At that time, Defendant advised the Probation Officer that he had no intention of seeking or obtaining employment at that time, stating that any available employment would not generate the level of income he was accustomed to earning.

On December 3, 2025, a grand jury returned a true bill on a slightly narrowed superseding indictment.  On December 10, 2025, the Court held a hearing at which Defendant was arraigned on the superseding indictment, a modified pretrial briefing schedule was discussed, and evidence and argument was presented on the Government's Motion to Revoke.

## II.  LEGAL STANDARD

18 U.S.C. § 3145(a) allows this Court to revoke a magistrate judge's release order.  It is uncontested that in doing so, the Court reviews the magistrate judge's determinations *de novo*. *See, e.g.*, *United States v. Clark*, 865 F.2d 1433, 1438 (4th Cir. 1989); *United States v. Burgess*, 2017 WL 6542939, at *1 (E.D. Va. Dec. 19, 2017).  For pretrial detention to be imposed on a defendant, "the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required."  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).  The finding depends on whether the government has shown, by a

5

preponderance of evidence, that the defendant poses a flight risk or that, by clear and convincing evidence, the defendant poses a danger to his community *and* that no conditions of release can reasonably cure these risks. *See United States v. Mallory*, 268 F. Supp. 3d 854, 865-66 (E.D. Va. 2017).

Under 18 U.S.C. § 3142(g), the Court must consider four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) The weight of the evidence against the person; (3) The history and characteristics of the person, including: The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4). If, after considering these factors, the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant *must* be detained pending trial. 18 U.S.C. § 3142(e).

Moreover, the Court has "the inherent power to take steps to protect the integrity of the judicial process and of the court itself." *Richardson v. Cabarrus County Bd. of Educ.*, 1998 WL 371999, at *4 (4th Cir. 1998) (per curiam) (unpublished). "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

### III.  ANALYSIS

As an initial matter, the Court finds by clear and convincing evidence that Defendant has violated the terms of his supervised release.  Additionally, considering the Section 3142(g) factors, the Court finds that the Government has shown by clear and convincing evidence that Defendant poses a danger to his community and that no conditions of release can reasonably cure this risk.  Accordingly, Defendant's bond and order of release will be revoked, and Defendant shall be detained pending trial.

### A.  Violation of Terms of Supervised Release

On October 17, 2025, Defendant was ordered released subject to several conditions, including (1) that he "actively seek employment" that is "preapproved by Pretrial" and is not "self-employment," and (2) that he "[a]void all contact, directly or indirectly[,] with any person who is or may be a victim or witness in the investigation or prosecution," including "co-conspirators related to the instant offense unless in the presence of counsel or Pretrial Services."  The evidence before the Court shows that, on November 17, 2025, Defendant told his Probation Officer that he had no intention of seeking or obtaining employment, stating that any available employment would not generate the level of income he was accustomed to having.  And defense counsel represented at the hearing that Defendant held himself out as unemployed.  Moreover, the evidence shows that Defendant directly contacted a witness in this case who has been subpoenaed to testify at Defendant's trial.  Accordingly, the Court finds by clear and convincing evidence that Defendant has violated the terms of his supervised release.

**B.  Danger to Community**

Turning to the Section 3142(g) factors, the Court finds that the Government has also shown by clear and convincing evidence that Defendant poses a danger to his community and that no conditions of release can reasonably cure this risk.

1.  Nature and Circumstances of the Offense

As to the nature and circumstances of the offense, Defendant here is charged with seven counts of wire fraud (18 U.S.C. § 1343) and two counts of Travel Act violations (18 U.S.C. § 2314).  He is specifically alleged to have used a purported precious metal business to defraud seven investors of nearly half a million dollars.  While Defendant is not alleged to have imposed any physical harm, courts have recognized that economic harm—including fraud—may also constitute a "danger to the community." *See, e.g.*, *United States v. Masters*, 730 F. Supp. 686, 689 (W.D.N.C. 1990) ("Defendant asserts that he does not pose a physical danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes."); *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992) (noting "danger may, at least in some cases, encompass pecuniary or economic harm"); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975) ("The 'danger to . . . the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005) (stating there is "no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act" (citation omitted)).

8

The risk of danger to the community is further heightened here because the Government has shown by clear and convincing evidence that after he was placed on supervised release Defendant continued to sell precious metals on behalf of "clients" through his wife, who was functioning as his third-party custodian. This is the precise type of conduct for which Defendant was charged—and thus raises substantial concerns that Defendant is continuing to engage in fraudulent conduct on supervised release and that he poses a danger to his community. Accordingly, the Court finds that this factor weighs in favor of detention.

### 2.  Weight of the Evidence

As for the weight of the evidence, the Government has represented that it has issued over thirty trial subpoenas for witnesses in this case, *see* Dkt. 33, including the witness that Defendant has been found to have directly contacted while on supervised release. Accordingly, while less developed than the other factors, the Court finds that this factor also weighs in favor of detention.

### 3.  History and Characteristics

Turning to history and characteristics, this Court is very familiar with this Defendant. Earlier this year, Defendant was before this Court in a separate action in which he twice failed to appear before this Court, failed to appear before a grand jury, and was held in civil contempt for failure to comply with a grand jury subpoena. The evidence before the Court also shows that Defendant previously failed to appear before other courts in 2007, 2009, 2013, and 2018. This repeated disregard for court orders additionally weighs in favor of detention.

### 4.  Nature and Seriousness of the Danger

Finally, the nature and seriousness of the danger here is also significant. Defendant is alleged to have engaged in a scheme to defraud multiple individuals of hundreds of thousands of dollars through a precious metal business. While on supervised release, rather than seek proper

employment as he was ordered to do, Defendant continued to sell precious metals and attempt to negotiate trades on behalf of "clients" through his wife, who was reported to have been a homemaker, not a precious metal businessperson, and who was functioning as Defendant's third-party custodian at the time. Defendant also violated an explicit court order by directly contacting a witness in this case and by indirectly maintaining contact with his supplier through his wife. The Court's concern over these interactions is compounded by the financial nature of the engagements. Specifically, the interactions show Defendant's apparent attempt to initiate a financial transaction worth in excess of $100,000 with a firm and individual that is a witness in the investigation and would likely be a witness at trial which raises concerns regarding witness tampering. Accordingly, the danger of further fraud on the community and of threats to the integrity of the judicial process is serious, and this factor also weighs in favor of detention.

### 5. No Conditions or Set of Conditions

Because Defendant has already willfully violated conditions of pretrial release and involved his third-party custodian in what appears to be the very same type of business that is charged in this case with potential trial witnesses, the Court also finds that no conditions or set of conditions can reasonably cure the risk of danger posed by Defendant in this case. Additionally, given Ms. Muhammad's actions shown here, the Court finds that she is no longer a suitable third-party custodian for Mr. Muhammad. At the hearing, defense counsel raised the possibility of Defendant's brother serving as a substitute third-party custodian; however, defense counsel represented that Defendant's brother was out of town until the following day, and the Court does not currently have sufficient information in the record before it to determine that Defendant's brother would be a suitable third party custodian, particularly given Defendant's continual disregard for court orders.

***

Accordingly, the Court finds that the Government has shown by clear and convincing evidence that Defendant poses a danger to his community and that no conditions of release can reasonably cure this risk.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Government's Motion to Revoke (Dkt. 49) is GRANTED; and it is

FURTHER ORDERED that Defendant's $250,000 bond is hereby REVOKED; and it is

FURTHER ORDERED that Judge Porter's Amended Order Setting Conditions of Release (Dkt. 17) is hereby REVOKED; and it is

FURTHER ORDERED that Defendant Warith Deen Muhammad shall be detained pending trial unless and until further order of this Court.

It is SO ORDERED.

Alexandria, Virginia
December 11, 2025

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge