IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:25-cr-284 (RDA) |
| | ) | |
| WARITH DEEN MUHAMMAD, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Bond (Dkt. 64), Defendant's Motion to Continue Trial and Extend Pretrial Deadlines (Dkt. 70), and Defendant's Motion to Substitute Attorney (Dkt. 72). Considering the Motions, the Government's Oppositions (Dkts. 65, 73, 74), the Revised Pretrial Services Bond Report (Dkt. 71), and arguments by counsel at the hearing held before this Court on January 7, 2026, this Court DENIES Defendant's Motion for Bond, DENIES Defendant's Motion to Continue Trial and Extend Pretrial Deadlines, and DENIES Defendant's Motion to Substitute Attorney for the reasons that follow.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2025, Defendant, on behalf of his business, Niagara Gold and Silver, was served with legal process requiring the production of certain company records. At the time, Defendant was represented by Assistant Federal Public Defender Brittany Davidson. On March 8, 2025, Ms. Davidson advised the Government that Defendant had terminated his relationship with her and retained private counsel, Chris Chaisson and Dennis Fitzpatrick. In mid-April, the Government met with Mr. Chaisson and Mr. Fitzpatrick for a reverse proffer. Following that meeting, defense counsel requested that the Government prepare a plea package for Defendant's consideration.

Shortly after receiving the plea package, Defendant terminated his relationship with Mr. Chaisson and Mr. Fitzpatrick.

In late summer and fall of this year, Defendant was then brought before this Court in an action related to the production of these documents. In that proceeding, Defendant twice failed to appear before this Court, failed to comply with a subpoena to testify, and was held in civil contempt for failure to comply with that subpoena. The Court repeatedly encouraged Defendant to retain counsel, but he declined to do so.

On October 9, 2025, a grand jury sitting in the Eastern District of Virginia returned a nine-count indictment charging Defendant with seven counts of wire fraud (18 U.S.C. § 1343) and two counts of Travel Act violations (18 U.S.C. § 2314). The Indictment alleges that, between approximately October 2021 and June 2023, Defendant used his purported precious metal business to defraud seven investors of approximately $422,500. On October 15, 2025, Defendant appeared before U.S. Magistrate Judge John F. Anderson for an Initial Appearance. On that date, Defendant was ordered detained pending a Detention Hearing and remanded to the custody of the U.S. Marshals Service. Assistant Federal Public Defender Davidson was again appointed to represent Defendant.

In preparation for the Detention Hearing, Defendant reported to Pretrial Services that he earns approximately $25,000 gross per month but that he had only $12 in his savings account because he recently purchased supplies for his business. Defendant reported that he pays $7,500 in rent, among other monthly costs, and that he had recently applied for a new passport at the time of the Pretrial Services Report.

Defendant further reported that his wife, Maria Muhammad ("Ms. Muhammad"), was a homemaker and that Defendant was the sole provider for his family. Ms. Muhammad corroborated

this statement and indicated that she had no knowledge of Defendant's finances.  Ms. Muhammad also initially claimed that she did not even know the name of Defendant's company; however, when asked how she did not recall the name of the company if Defendant had owned said company for fourteen years, she later confirmed the name of the company.

As relevant here, Defendant also has several prior failures to appear in his record from 2007, 2009, 2013, and 2018.  Ms. Muhammad was also arrested in 2018 for failure to appear. Three money judgements have also previously been entered against Defendant—and, in two of those instances, judgments were also entered against Ms. Muhammad.  Most recently, in July 2025, a judgment in the amount of $89,000 was entered against Defendant and Ms. Muhammad for failure to pay rent.  Other judgments were previously entered in the amounts of $18,966.71 (2018) and $14,000 (2023).

On October 17, 2025, Defendant appeared before U.S. Magistrate Judge William B. Porter for his Detention Hearing.  Judge Porter heard evidence and argument and, at the conclusion of the hearing, ordered Defendant released on a $250,000.00 cash bond with the following special conditions (emphasis added):

1. Submit to supervision by and report for supervision to the Pretrial Services Office;
2. **Continue or actively seek employment. Must be preapproved by Pretrial. No self- employment**;
3. Surrender any passport to Pretrial Services;
4. Not obtain a passport or other international travel document;
5. Do not depart the Washington D.C. metropolitan area without the prior approval of Pretrial Services or the Court;
6. **Avoid all contact, directly or indirectly with any person who is or may be a victim or witness in the investigation or prosecution. Including: Co-conspirators related to the instant offense unless in the presence of counsel or Pretrial Services**;
7. Participate in the following location restriction program and comply with its requirements as directed: CURFEW: You are restricted to your residence everyday as directed by the pretrial services office or supervising officer;

3

8.  Submit to the following location monitoring technology and comply with its requirements as directed: GPS;
9.  Do not open any new lines of credit or loans without prior approval of Pretrial Services or the Court;
10. Notify any current or future clients and/or employer of the nature of the charged offense if deemed necessary by Pretrial Services;
11. Provide Pretrial Services access to all financial records as requested;
12. **Release to and reside in the third-party custody of Maria Muhammad**; and
13. Must post a $250,000.00 cash bond (secured).

Defendant was remanded to the custody of the U.S. Marshals Service until these conditions could be met.

On October 21, 2025, Ms. Muhammad (using her maiden name, "Maria Bonilla") sold three gold one-ounce eagles for $12,000 to a company that is alleged to have been one of Defendant's leading precious metal suppliers throughout the instant alleged fraud ("Precious Metal Company 1").[1]  Ms. Muhammad told Precious Metal Company 1 that she was now running Defendant's business.

On October 22, 2025, Defendant was arraigned on the Indictment.  At the arraignment, the parties agreed that the speedy trial deadline in this case was December 24, 2025, and Ms. Davidson represented that, given another trial she had scheduled in December, setting a trial date within the speedy trial deadline would deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.  Both the Government and Defendant agreed that only a short extension of the speedy trial was necessary, and they agreed to setting a trial date of January 12, 2026.  Dkt. 23.  Defendant also signed a speedy trial waiver.  Dkt. 21.  The Court thus found that setting a trial date within the speedy trial deadline would deny

---

[1]  The Government provided records related to Precious Metal Company 1 to defense counsel in discovery, as well as memoranda of interviews of employees of Precious Metal Company 1.  Furthermore, the Government subpoenaed the owner of Precious Metal Company 1 to testify at trial, and the Government anticipates that it may have to call other witnesses, including possibly B.W. (discussed *infra*).

defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence, that the ends of justice were served by setting trial beyond the speedy trial timeframe, and that the ends of justice outweighed the best interest of the public and Defendant in a speedy trial.  Dkt. 23.  Accordingly, a jury trial was set for January 12, 2026, and the intervening time was excluded from the speedy trial calculation.  Later that day, an unopposed emergency motion was filed and granted by this Court to modify the conditions of Defendant's release to allow Defendant to post a $250,000 surety bond.  The same day, Defendant's passport was also surrendered to Pretrial Services.

On October 23, 2025, Defendant was enrolled in the Location Monitoring Program utilizing GPS technology and was released from the custody of the U.S. Marshals Service.  The conditions of release were reviewed with him and his third-party custodian, Ms. Muhammad.  At that time, the Probation Officer discussed with Defendant his plans for seeking employment.  Defendant and Ms. Muhammad inquired whether Defendant could obtain employment working for Ms. Muhammad.  The Probation Officer advised them that Ms. Muhammad would need to provide specific details of any proposed employment for review and approval.  Defendant then asked what would occur if he chose not to work.  The Probation Officer stated that, because employment is a condition of his release, his attorney would need to file a motion with the Court to have the condition removed, otherwise he would be required to secure employment.

On November 3, 2025, Ms. Muhammad visited Precious Metal Company 1 and sold a silver bar for $4,705.  Later that day, Ms. Muhammad texted B.W., the son of the owner and a key employee of Precious Metal Company 1, writing, "Hello [B.W.]  This is Maria Muhammad.  I was just at your store.  I wanted to touch base on our gold and platinum deal.  The client had to push back till the 18th due to conflict in their schedule.  Just wanted to make sure you will have the

supply ready." Ms. Muhammad and B.W. continued to text over the next few weeks regarding selling and trading precious metals for Ms. Muhammad's alleged clients. Ms. Muhammad provided multiple photos indicating that she was in possession of a sizeable quantity of precious metals. The owner of Precious Metal Company 1 estimated that Ms. Muhammad was trying to sell to Precious Metal Company 1 over $100,000, or maybe even $150,000, in precious metals. On November 14, 2025, Ms. Muhammad sold two half-ounce gold eagles to Precious Metal Company 1 for $4,100.

During this time, in early November, shortly after B.W. declined to engage in a trade requested by Ms. Muhammad, Defendant himself texted the owner of Precious Metal Company 1 and requested that the owner contact Defendant. The owner declined to do so because he had been subpoenaed to testify at Defendant's trial.

On November 13, 2025, the day before Defendant's deadline to produce documents responsive to the grand jury subpoena that the defense intends to use in its case-in-chief at trial, Defendant filed a motion to appoint new counsel. Dkt. 32. The motion specifically noted: "*Mr. Muhammad* has requested that undersigned counsel withdraw and new counsel be appointed." *Id.* (emphasis added).[2] The next day, on the deadline, Defendant filed a motion to continue the discovery deadline pending resolution of the motion. Dkt. 34. The Government opposed the motion to continue. Dkt. 35. Finding no good cause to extend Defendant's deadline, the Court denied the motion to continue, Dkt. 36, and set a hearing on the motion to appoint counsel for November 19, 2025.

---

[2] At a subsequent hearing in this matter, it was suggested that it was *Ms. Davidson* who requested the change in counsel, rather than *Mr. Muhammad*. This suggestion is incorrect, both based on the filings made at the time and based on the *ex parte* communications that this Court had with Ms. Davidson regarding the conflict.

At the hearing, the Government and Defendant consented to the Court speaking with Ms. Davidson privately regarding the basis for the motion. Dkt. 44. Accordingly, the Court held an *in camera*, *ex parte* hearing with Ms. Davidson during which she explained the nature of the breakdown in the attorney-client relationship. *Id.* Based on Ms. Davidson's representations, the Court found that the motion was timely, that Ms. Davidson and Defendant had reached an irreconcilable conflict, and that the breakdown in the attorney-client relationship was sufficiently great to warrant the appointment of new counsel. *Id.* Accordingly, the Court granted Defendant's motion, terminated Ms. Davidson from the representation, and appointed Gregory Hunter pursuant to the Criminal Justice Act to represent Defendant. *Id.* At the end of the hearing, the Court had the following colloquy with Defendant:

> THE COURT: . . . Mr. Muhammad, I want to let you know something. You've now gone through basically three attorneys now. And it needs to come a point in time where you listen to what people are trying to tell you and not try to, in effect, game the system. Mr. Hunter is a very well-respected lawyer in this Court. He's going to do the best he can with you. But I will tell you this, he's not going to blow rainbows and sunshine at you. He's going to tell you what you need to hear. This is your last chance to have another lawyer. You've gone through three. You're not going to go through four. Do you understand that, sir?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: And if you want to get a fourth lawyer, you can go out and hire somebody.
>
> THE DEFENDANT: Well, I will say that it's not my intention to ever game the Court ever. My intention is to just prove my innocence.
>
> THE COURT: Well, your approach of proving your innocence may, in some instances, be counterintuitive to the way we do business in this Court.
>
> THE DEFENDANT: Yes, sir.

On November 17, 2025, the Probation Officer met with Defendant at his home for a scheduled home contact. During this contact, the Probation Officer inquired about Defendant's

job search activity and plans for employment. At that time, Defendant advised the Probation Officer that he had no intention of seeking or obtaining employment at that time, stating that any available employment would not generate the level of income he was accustomed to earning.

On December 3, 2025, a grand jury returned a true bill on a slightly narrowed Superseding Indictment. Dkt. 45. On December 8, 2025, the Government filed a Motion to Revoke Defendant's Bond. Dkt. 49. Pretrial Services also provided and the Court issued a Petition on Order on Violation of Pretrial Release. Dkt. 53.

On December 10, 2025, the Court arraigned Defendant on the Superseding Indictment. Dkt. 56. At that same hearing, Mr. Hunter requested to continue the January 12, 2026 jury trial date for a short period in order to ensure defense counsel had a reasonable time necessary for effective preparation, taking into account the exercise of due diligence. After some discussion, both the Government and Defendant agreed to a short two-week continuance of the trial date to January 26, 2026. Dkt. 63. Defendant also filed a further speedy trial waiver. Dkt. 59. Accordingly, the Court found that continuing with the January 12, 2026 trial date would deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence, that the ends of justice continued to be served by setting trial beyond the speedy trial timeframe, and that the ends of justice continued to outweigh the best interest of the public and Defendant in a speedy trial. Accordingly, the Court reset the jury trial for January 26, 2026, and excluded the time until that date from the speedy trial calculation. Dkts. 59, 63. The Court also extended pretrial deadlines accordingly. Dkts. 56, 57.[3]

_____

[3] The Order setting the new pretrial deadlines stated: "No later than seven days prior to trial, on or before **January 5, 2026**, the Government shall file with the Clerk's Office all trial exhibits to be used in the Government's case-in-chief, an exhibit list, and a witness list, with copies to chambers." Dkt. 57 at 5. Although elsewhere in the Order, the Court correctly noted "one week prior to trial, which is **January 20, 2026,**" here the Court retained a vestige of the prior scheduling

At the hearing, evidence and arguments were also presented on the Government's Motion to Revoke. Dkt. 56. At the conclusion of the hearing, Defendant's bond was revoked, and Defendant was remanded, but the Court indicated that it would consider a motion for bond from Defendant, if a suitable third-party custodian was available. *Id.* On December 11, 2025, this Court issued a Memorandum Opinion and Order explaining its reasons for revoking Defendant's bond and ordering that Defendant be detained pending trial. Dkt. 61.

On December 17, 2025, Defendant filed a Motion for Bond, proposing new third-party custodians (Defendant's brother and aunt) and that Defendant satisfy the work requirement by working as a preparation cook at a restaurant where his brother is executive chef. Dkt. 64. On December 18, 2025, the Government filed an Opposition. Dkt. 65. On December 19, 2025, this Court set a hearing on the Motion for Bond for January 7, 2026.

On Saturday, December 20, 2025, the Government received an email from a new attorney, Amy Collins. Dkt. 73-1 at 8. She advised that Defendant had reached out to her about representing him, and she inquired if the Government would object to a continuance "should [she] be retained in this matter" as she had an "international trip" scheduled for the week of the trial and another trial scheduled for February, "both conflicting with Mr. Muhammad's current trial schedule." *Id.*

---

order. This was a typographical error. After receiving the Court's Order, Government counsel reached out to Chambers, copying Mr. Hunter, to clarify this date and seek further information. Chambers staff confirmed to all counsel that the January 5 date was a typographical error and the "seven days prior to trial" language controlled. No party objected to this clarification.

At a subsequent hearing, it was suggested that this communication from Chambers staff and the Order's language "seven days prior to trial" was insufficient and that the Government had missed its deadline. Accordingly, out of an abundance of caution and to clarify the record the Court now amends its prior Order and DIRECTS the Government: No later than seven days prior to trial, on or before, **January 20, 2026**, the Government shall file with the Clerk's Office all trial exhibits to be used in the Government's case-in-chief, an exhibit list, and a witness list with copies to chambers. This ordering paragraphs contained below will also reflect this amendment.

The Government promptly replied, stating that they would object to any continuance because the "matter has already been previously continued to the Government and victims' detriment." Specifically, on the morning of December 22, 2025, the Government replied, stating that they "would strongly object to any continuance" for the following reasons:

> This matter has already been previously continued to the Government and victims' detriment. More than 20 victims and witnesses—many of whom are traveling from out-of-state—have already rearranged their schedules following the first continuance. The Government has conflicts in February, which is partially why this matter was originally scheduled to this date. Lastly, Mr. Muhammad has a tendency to fire counsel who tell him information that he does not want to hear. You would be the fourth counsel to represent him this year (or fifth, if you double count the PD's office, who he fired twice). At the last change of counsel hearing, the Court admonished Mr. Muhammad that any additional changes of counsel (and continuances resulting therefrom) would be highly disfavored.

*Id.* at 7-8.

On December 24, 2025, Mr. Hunter contacted chambers to indicate that Mr. Muhammad was trying to hire new counsel, indicating "[s]he's aware of the trial date" and that he had "committed to helping get her up to speed as fast as possible." Chambers staff responded on December 29, 2025, thanking Mr. Hunter for keeping the Court informed and indicating that Chambers would watch for her entry of appearance, which had not yet been entered.

On December 26, 2025, the pretrial motions deadline, both the Government and Mr. Hunter filed motions in this case. Dkts. 66, 67.

On December 30, 2025, Ms. Collins responded to the Government's email stating that, in addition to her scheduling conflicts, she believed there was "significant additional investigation" for her to do and that she was planning to submit a motion to extend deadlines and continue the trial by the following day. Dkt. 73-1 at 7. Andrew Michael Stewart then filed a notice of attorney appearance on behalf of Mr. Muhammad as local counsel and a motion to appear *pro hac vice* for Ms. Collins to represent Mr. Muhammad. Dkts. 68, 69.

On December 31, 2025, Ms. Collins emailed the Government to request a new copy of the discovery be produced directly to her, and the Government produced most of the discovery to Ms. Collins within hours of her request.  Dkt. 73-1 at 2-5.  Ms. Collins stated that she encountered technical difficulties accessing the production and would let the Government know if she was able to resolve the issue.  *Id.* at 2.  The same day, Mr. Hunter also promptly hand-delivered a copy of the discovery he had received to Ms. Collins's office.  Later, Mr. Stewart filed the Motion to Continue Trial and Extend Pretrial Deadlines on behalf of Defendant.  Dkt. 70.

On the evening of Friday, January 2, 2026, Ms. Collins asked the Government to provide her with a flash drive of parts of the discovery that she was having difficulty accessing.  Dkt. 73-1 at 2.  Mr. Hunter sought clarification because he thought the materials were in the thumb drive that he had delivered to her office.  *Id.*  She responded that she had not yet picked up the copy of the discovery that Mr. Hunter had provided.  *Id.* at 1.

On Monday, January 5, 2026, the Government notified Ms. Collins that a hard drive with all of the discovery was ready for pickup at the U.S. Attorney's Office.  *Id.*  Ms. Collins replied that she would retrieve it after the Wednesday, January 7, 2026 hearing because she would be in court in Maryland the next day.  *Id.*

Also, on January 5, 2026, a Revised Pretrial Services Bond Report, Defendant's Motion to Substitute Attorney, and the Government's Opposition to Defendant's Motion to Substitute Attorney were filed.  Dkts. 71, 72, 73.  On January 6, 2026, the Government's Supplemental Response in Opposition to Defendant's Motion for Bond was filed.  Dkt. 74.

At 6:41 p.m. on January 6, 2026, Ms. Collins emailed chambers to indicate that she would be objecting to the Government's Supplemental Response.  At 8:36 p.m., on January 6, 2026, Ms. Collins emailed chambers a copy of a letter from Defendant's brother, Mohsen Mohammed.  The

letter, dated January 2, 2026, contained an offer of employment with a start date of January 5, 2026 (on which date, Defendant was incarcerated).

On January 7, 2026, this Court held a hearing on the Motion for Bond, Motion to Continue, and Motion to Substitute Attorney. Dkt. 76. Neither the Motion to Continue nor the Motion to Substitute Counsel mention any breakdown in the relationship between Defendant and Mr. Hunter. At the hearing, Ms. Collins suggested for the first time that there was such a breakdown but did not provide any information regarding the nature of the breakdown or when it occurred. Neither Mr. Muhammad nor Mr. Hunter confirmed the same to the Court.

## II. ANALYSIS

Defendant has filed three motions that are currently before the Court: the Motion for Bond, the Motion to Continue Trial and Extend Pretrial Deadlines, and the Motion to Substitute Attorney. The Court addresses each in turn.

### A. Motion for Bond

For pretrial detention to be imposed on a defendant, "the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). The finding depends on whether the government has shown, by a preponderance of evidence, that the defendant poses a flight risk or that, by clear and convincing evidence, the defendant poses a danger to his community *and* that no conditions of release can reasonably cure these risks. *See United States v. Mallory*, 268 F. Supp. 3d 854, 865-66 (E.D. Va. 2017).

Under 18 U.S.C. § 3142(g), the Court must consider four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) The weight of the evidence against the person; (3) The

history and characteristics of the person, including: The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(4). If, after considering these factors, the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community," the defendant *must* be detained pending trial. 18 U.S.C. § 3142(e).

Moreover, the Court has "the inherent power to take steps to protect the integrity of the judicial process and of the court itself." *Richardson v. Cabarrus County Bd. of Educ.*, 1998 WL 371999, at *4 (4th Cir. 1998) (per curiam) (unpublished). "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993).

In its prior Memorandum Opinion and Order revoking Defendant's bond, the Court found by clear and convincing evidence that Defendant had violated the terms of his supervised release by not actively seeking employment and by contacting a person who is or may be a victim or witness in the investigation or prosecution outside the presence of counsel or Pretrial Services. Dkt. 61. Additionally, considering the Section 3142(g) factors, the Court found that the Government had shown by clear and convincing evidence that Defendant poses a danger to his community and that no conditions of release can reasonably cure this risk.

In the instant Motion for Bond, Defendant proposes that a new set of conditions could reasonably cure the risk previously identified by the Court. Specifically, Defendant proposes that

either his brother or his great-aunt serve as his third-party custodian and that he satisfy his previously imposed work requirement by working as a preparation cook for his brother. Defendant's brother's work hours as an executive chef, however, do not allow him to adequately supervise Defendant, and Defendant's brother has also previously stated that he would only be willing to post a $200 cash bond and would need more time to consider co-signing an unsecured bond. Although Defendant's brother expressed to Pretrial Services, and this Court via the letter, that he could be somewhat flexible with his work hours, Pretrial Services still indicated that it did not believe that Defendant's brother was a suitable third-party custodian. Dkt. 71. This Court agrees. Accordingly, the Court finds that Defendant's brother is not a suitable third-party custodian. As for Defendant's great-aunt, the Government provided evidence indicating that Defendant successfully pitched his great-aunt on precious metals transactions during the same period in which he is alleged to have committed the instant charged fraud scheme and that she herself is a potential victim or witness in this case. Defendant's great-aunt is also reportedly unwilling to consider co-signing either an unsecured or a secured bond. Defendant's great-aunt also has significant mobility issues. Dkt. 71. Accordingly, Defendant's great-aunt is also not a suitable third-party custodian. Because Defendant has not identified a suitable third-party custodian, his Motion for Bond is denied.

### B. Motion to Continue

The Sixth Amendment provides "that a defendant must be afforded a *reasonable opportunity* to secure counsel of his own choosing." *United States v. Gallop*, 838 F.2d 105, 107 (4th Cir. 1988) (emphasis added) (abrogated on other grounds). However, "[s]uch right must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice." *Id.* "Indeed, in light of the myriad scheduling burdens that

14

a court faces in 'assembling the witnesses, lawyers, and jurors at the same place at the same time,' the Supreme Court has counseled that 'broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to assistance of counsel.'" *United States v. Zangwill*, 197 F. App'x 888, 891 (11th Cir. 2006) (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983)). Factors to be considered in determining whether a denial of a continuance would impinge upon a defendant's fair and reasonable opportunity to choose counsel include "(1) the length of the delay; (2) whether the counsel who becomes unavailable for trial has associates prepared to try the case; (3) whether other continuances have been requested and granted; (4) the inconvenience to all involved in the trial; (5) whether the requested continuance is for a legitimate reason; and (6) any unique factors." *United States v. Zangwill*, 197 F. App'x 888, 891–92 (11th Cir. 2006) (quoting *United States v. Baker*, 432 F.3d 1189, 1248 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006)).

Here, Defendant seeks a continuance of more than three months, and this Court has already granted two prior trial continuances—first setting the trial approximately 2.5 weeks after the standard speedy trial deadline and then continuing the trial a further two weeks—both intended to allow defense counsel adequate time to prepare a defense in the case. *See Zangwill*, 197 F. App'x at 892 (holding district court did not abuse its discretion in denying a continuance where proposed continuance would have delayed trial for 1.5 months and the district court had already granted one two-month continuance to allow prior counsel "adequate time to prepare" defense to thirty-eight count indictment); *United States v. Zimny*, 873 F.3d 38, 56–57 (1st Cir. 2017) ("[A] district court has discretion to weigh prior [continuances] in the calculus of whether to grant an additional continuance.").

Moreover, "[a] request for change in counsel cannot be considered justifiable if it proceeds from a transparent plot to bring about delay." *Gallop*, 838 F.2d at 108. Even if a defendant's motives are proper, courts have recognized that a Defendant's dilatory manner in attempting to secure new counsel weighs in favor of denying a motion to continue. *See Zangwill*, 197 F. App'x at 892 (11th Cir. 2006) (holding district court did not abuse its discretion in denying a continuance where defendant waited a month after trial was scheduled to seek replacement counsel and the court was not informed of the development until weeks before trial was scheduled to begin). Here, Defendant has a history of seeking to change counsel around key deadlines that raises significant concerns about Defendant hiring and firing attorneys as a delay tactic. Indeed, this Court previously warned Defendant that further requests for new counsel and continuances on that basis would be disfavored. Now, Defendant has retained Ms. Collins despite knowing of her personal conflict with the jury trial date. *See United States v. Fernandez*, 576 F. Supp. 397, 403 (E.D. Tex. 1983) (holding denial of defendant's motion for continuance did not violate defendant's right to counsel where "defendant attempted to manipulate the Court's scheduling by retaining an attorney whom he knew had a conflict"), *aff'd sub nom. United States v. Mitchell*, 777 F.2d 248 (5th Cir. 1985).[4] Even assuming Defendant has proper motives, he still appears to have waited more than a month after Mr. Hunter was appointed to represent him and trial was reset for January 26, 2026, to seek Ms. Collins's representation, which counsels against granting the continuance.

In her attempt to assuage the Court's concerns about delay tactics at the hearing, Ms. Collins represented that Defendant was actually "very apprehensive" about her schedule and that

---

[4] *See also United States v. Pena*, 2024 WL 3859590, at *2 (D.N.M. Aug. 19, 2024) (denying third motion to continue where defendant sought a four-month continuance to retain counsel who had a scheduling conflict).

she would have to ask to continue the trial and that he "pushed back" and only agreed to the request for a continuance "after taking a day or two to mull it over." These representations, if true, alternatively raise concerns about Defendant's willingness to waive his speedy trial rights to continue the trial which the Court takes very seriously. Indeed, no speedy trial waiver was included with the Motion to Continue.

Moreover, under the Speedy Trial Act, a trial continuance is only warranted under limited circumstances to protect not only the Defendant's but also the public's right to a speedy trial. 18 U.S.C. 3161(h)(7)(A). To that end, a defendant seeking a continuance must show that the *public's* interest in a speedy trial is outweighed by concerns related to his ability to prepare his case. As to the public's interest, more than 2.5 years have now passed since the conclusion of the alleged offense in which Defendant is accused of using fraudulent representations to defraud seven investors of approximately $422,500.[5] The Government has represented that more than 30 trial subpoenas have been issued and travel has been arranged for witnesses from West Virginia, Maryland, Nevada, Florida, New York, and Texas—witnesses that include Defendant's alleged victims, as well as Defendant's former business associates and representatives from financial and banking institutions. *See Zangwill*, 197 F. App'x at 892 (holding district court did not abuse its discretion in denying a continuance where government had prepared and scheduled the testimony of fifteen witnesses, both law enforcement officers and victims).

Even if the Court were to put the public interest aside, which it cannot do, Defendant has not established that failure to grant this continuance would be likely to make a continuation of the case "impossible" or result in a "miscarriage of justice." Mr. Hunter remains a member of the

---

[5] In subsequent filings, the Government has represented that it now alleges that Defendant induced more than 12 investors to send him over $1.5 million.

defense team and has not moved to terminate his representation.  Mr. Hunter indicated that he was preparing to go to trial on January 26, 2026, and that he anticipated being ready to proceed on that date, when Ms. Collins contacted him.  The Court is very familiar with Mr. Hunter's qualifications and experience, and he remains prepared to conduct trial as scheduled if so ordered.  *See United States v. Zimny*, 873 F.3d 38, 55 (1st Cir. 2017) ("It was not an abuse of discretion for the district court to place some weight on the fact that Zimny had other counsel ready to fill the void left by Reddington's scheduling conflict."); *id.* at 56 ("[W]e can't fault the court's on-the-ground assessment of Watkins's ability to handle the bulk of the trial responsibilities.  The court had seen Watkins in action at pretrial hearings and conferences, consulted his website biography, and concluded that he was 'experienced, able and clearly familiar with this case.'  . . .  Although Watkins asked for the court's patience before he cross-examined Gerald, he also added, 'I am prepared as best I can be. . . .  I think we've got it all in order and I think we've got it in shape.'").  Although Ms. Collins vaguely referenced alleged irreconcilable differences at the hearing, neither Mr. Hunter nor Defendant have themselves raised any specific allegations or put forward any evidence of irreconcilable differences.  And such differences were not alluded to in the Motion to Continue or Motion to Substitute.

Moreover, although Ms. Collins repeatedly alluded to additional investigative measures that she seeks to undertake, at no point did she provide the Court with any details as to what this might specifically entail, *ex parte* or otherwise.[6]  And, although she vaguely characterized the discovery as "voluminous," neither Ms. Davidson nor Mr. Hunter (nor the Government) has sought to designate the case as complex and this Court's prior speedy trial orders were based on findings

---

[6] Although Ms. Collins included a footnote in the Motion to Continue stating that she could provide the Court additional detail "[u]pon the Court's request," Dkt. 70 at 3 n.4, it is Defendant's burden to affirmatively support their motion with all necessary information.

that only short continuances were necessary to allow reasonable time for defense counsel's effective preparation, taking into account the exercise of due diligence. Thus, both Ms. Davidson and Mr. Hunter were prepared to move ahead in a significantly shorter time than the four additional months (nearly double the standard speedy trial window) that Ms. Collins now suggests that she needs. Moreover, Ms. Collins can rely on the investigations previously conducted by three sets of lawyers: Mr. Chaisson and Mr. Fitzpatrick, Ms. Davidson, and Mr. Hunter. Although Ms. Collins has obviously been in contact with Mr. Hunter, it is not clear what steps Ms. Collins has taken to reach out to these other experienced criminal attorneys to see what might be in their case files and whether it reduces the need for the four-month long extension she seeks. Indeed, it appears to the Court that the desire for a continuance is due in part to Ms. Collins's personal schedule, as Ms. Collins reports that she has an international trip planned during the week of trial and other obligations in early February. Given these prior obligations, it is not clear to the Court when Ms. Collins would begin the investigation that she asserts is necessary. It appears to the Court that those conflicts, known to Ms. Collins before she took the representation, may be playing an outsized role in driving the request for a continuance.

Additionally, to the extent Defendant seeks a continuance based on an argument that a failure to grant the continuance would deny counsel for the defendant the reasonable time necessary for effective preparation,[7] *taking into account the exercise of due diligence*, the Government's evidence raises concerns that Ms. Collins has not exercised due diligence in proceeding with this case. Despite apparently knowing she would be retained prior to December

---

[7] The Court notes that neither Defendant's Motion to Continue nor defense counsel's argument at the hearing analyzed any factors relevant to the Speedy Trial Act. Nor did counsel address any of the extensive case authority cited by the Government.

20—approximately a week before the already extended pretrial motions deadline—Ms. Collins took no steps in the case *until after the deadline had passed* other than checking to see if the Government would consent to a trial continuance *in the event* she were retained due to her preexisting international travel plans (to which the Government promptly and expressly represented it would object to any further continuances). Indeed, new local counsel did not even file an appearance and Ms. Collins's motion to appear *pro hac vice* until December 30, and Ms. Collins did not request discovery until December 31. The Government then produced most of the discovery within hours of receiving her request, but, despite reportedly immediately experiencing technological issues, Ms. Collins did not request an alternate means of production until the end of the day on Friday, January 2.[8] And, although Mr. Hunter had also promptly hand-delivered a copy of the discovery he had received to Ms. Collins's office before she filed her motion to continue on December 31, at the end of the day on Friday, January 2, Ms. Collins stated she still had not retrieved that copy either. *Id.* at 1. Importantly, on Monday, January 5, the Government advised that it had made all the discovery available for pick-up at its office on a hard drive, and Ms. Collins indicated that she would pick it up after the hearing on January 7. This delay in particular suggests that Ms. Collins has not sufficiently prioritized the expeditious handling of this case or attempting to comply with current deadlines. As this Court regularly advises parties, and indeed advised Defendant in the related proceeding, it is important that parties recognize that court-imposed deadlines still apply, even when a party has a motion pending to change them.

Rather than assuage the Court's concerns, Ms. Collins's own statements at the hearing cast further doubt on her ability to exercise due diligence in this case, including *inter alia* the following:

---

[8] Other than her own prior obligations, it is not clear how Ms. Collins could assess the need for, or the length of, any additional investigation when she filed the Motion to Continue the same day that she requested discovery.

> MS. COLLINS:  . . . Mr. Muhammad, before, you know, I was even formally retained, asked me to, the day I was coming back from out of town for the holidays, he said can you go to my house and pick up the documents that I have, you know, to help form my defense.  And so, I would have been there at like 10:00 p.m. or midnight, and I said, "No, I will go get them tomorrow," but I appreciate him making them available to me that expeditiously.  So the next day I went to go pick up those documents.  I had a filing deadline the next day that involved a filing that was over 600 pages, including exhibits.  And so, it was not feasible for me to review all the documents or even get to begin to dive into them, you know, beyond just a couple – review a couple of loose pieces of paper here and there. . . .

Accordingly, the Court thus FINDS that continuing with the January 26, 2026 trial date would not deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence under 18 U.S.C. § 3161(h)(7)(B)(iv).  Importantly, Mr. Hunter will remain counsel on the defense team, and Ms. Collins and Mr. Stewart have the benefit of the investigation and analysis conducted by three other sets of counsel to aid in bringing them up to speed.  The Court also FINDS that the ends of justice would not be served by further continuing this trial, and that Defendant's interest in a continuance does not outweigh the best interest of the public in a speedy trial pursuant to 18 U.S.C. § 3161(h)(7)(A).  Thus, the Motion to Continue is denied.

### C.  Motion to Substitute Counsel

Finally, turning to the Motion to Substitute Counsel, as discussed further *supra*, Ms. Collins is currently unavailable during the week of trial, which, for the reasons also explained *supra*, will not be continued.  Accordingly, the Motion to Substitute Counsel is denied, although Ms. Collins and Mr. Stewart are added to the defense team and may participate in the preparation of Defendant's defense and in his defense at trial to the extent they are or become available.

### III.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Bond (Dkt. 64) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Continue Trial and Extend Pretrial Deadlines (Dkt. 70) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Substitute Attorney (Dkt. 72) is DENIED; however, Ms. Collins and Mr. Stewart are ADDED as attorneys for Defendant; and it is

FURTHER ORDERED that the Government's deadline to file with the Clerk's Office all trial exhibits to be used in the Government's case-in-chief, an exhibit list, and a witness list, with copies to Chambers is January 20, 2026, at 2:00 p.m.;[9] and it is

FURTHER ORDERED that the deadline to file any pretrial motions, including motions *in limine*, was December 26, 2025, the deadline to file responses to such motions was January 9, 2026, and the deadline to file replies in support of such motions is January 14, 2026; and it is

FURTHER ORDERED that the deadline to file a joint statement setting forth which prospective jurors the parties agree should be excused based on their responses to the questionnaire is January 16, 2026; and it is

FURTHER ORDERED that the Government's deadline to make the expert disclosures outlined on page 3 of the Discovery Order (Dkt. 31) was January 7, 2026, unless the expert testimony is to be offered in response to a previously noticed expert of a defendant, in which case the deadline is January 16, 2026; and it is

---

[9] Again, the Court notes that, on December 12, 2025, in an email copying Mr. Hunter, the Government sought to confirm this and the following three deadlines with the Court. Chambers staff confirmed these deadlines the same day, and both the Government and Mr. Hunter responded to the Court's email confirming their understanding. A copy of this email exchange appears to have been provided by the Government to Ms. Collins and Mr. Stewart on December 31, 2025. Dkt. 73-1 at 4. Nonetheless, to avoid any further confusion and out of an abundance of caution, the Court now also memorializes these deadlines in this Order.

FURTHER ORDERED that this Court CLARIFIES that, although the deadline for *voir dire* questions was January 7, 2026, this Court permits the parties to ask additional questions of specific jurors should additional questionnaire responses be received or should a specific juror's responses in open court require further exploration.[10]

It is SO ORDERED.

Alexandria, Virginia
January 9, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[10] On January 7, 2026, the Government notified the Court via email that it did not have any additional *voir dire* questions that it would like asked to the entire panel and that it did not understand the Court's Order to be seeking *voir dire* questions for specific jurors by that date.

23