IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> WARITH DEEN MUHAMMAD, <br><br> *Defendant*. | Criminal No. 1:25-CR-284 <br><br> The Honorable Rossie D. Alston <br><br> Trial Date: January 26, 2026 |

### United States Motion in Limine to Preclude Defense Expert Testimony

The United States of America respectfully moves the Court for an order to exclude the expert testimony of Defendant's proposed expert witnesses, Andrew Sotak and Carey Miller. The defendant seeks to call one or both of the witnesses to testify regarding "flow of funds," "collateralization of investments against precious metals," and the defendant's "business activities," among other matters. The Court should the Court should not allow the defendant's proposed experts to testify as experts.

Not only is the defendant's notification of his intent to call multiple experts late—the Government received the notice on Friday, January 9, which was after the notice deadline of January 7—but the notices do not even pretend to satisfy the disclosure requirements. The defendant has neither revealed the experts' purported opinions, nor the bases for their opinions. To the contrary, he has admitted that they have not yet even reviewed the data necessary to form opinions. Without this critical information, the Government cannot assess whether the experts have the requisite background to provide such testimony. Moreover, the late and insufficient notice precludes the government from investigating and preparing a response to any claims made by the

1

defendant's purported experts. Lastly, to the extent that the Government is aware of the broad categories for which the defendant seeks expert testimony, they appear to include categories for which the testimony of an expert would be irrelevant and improper, and would create a real risk of consuming or misleading the jury. For these reasons, the Court should not allow the defendant's proposed experts to testify as experts.

## I.    Facts and Procedural History

### 1.  General Case Overview

On October 9, 2025, a grand jury sitting in the Eastern District of Virginia returned a nine-count indictment charging the defendant with seven counts of wire fraud (18 U.S.C. § 1343) and two counts of Travel Act violations (18 U.S.C. § 2314). As alleged, beginning in the fall of 2021, the defendant falsely told investors that if they invested with him and his business, Niagara Gold and Silver LLC, he would use their money to buy, trade, and sell precious metals. ECF No. 45, ¶ 10. He promised investors that these transactions would generate guaranteed profits, generally of 5 to 10%, and that they would receive their principal plus their interest back within 30 days. *Id.* Instead of trading precious metals, however, the defendant used his victims' funds to pay back other investors, to induce new investments, and to pay for his own living and personal expenses. *Id.* ¶ 4. Nonetheless, after the 30 days, Muhammad represented to the investors that the "investments" had been successful and that he was sending them payments of supposed "profits." These payments induced investors to continue sending the defendant money. From October 2021 through June 2023, the defendant used these fraudulent representations to induce more than 12 investors to send him over $1.5 million.

### 2.  Background on Expert Witness Deadlines

On November 3, 2025, the parties filed a Consent Motion for Discovery Order, which had been negotiated and agreed to by the parties. *See* ECF No. 29, Consent Motion. The Court entered the requested Discovery Order on November 3. ECF No. 31, Discovery Order. Paragraph 5 of that order set that the Government shall disclose to the defendant no later than 15 business days before trial a complete statement of all opinions that the Government will elicit from the witness; the bases and reasons for the opinions; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition. *Id.* Paragraph 8 applied the same language to the defendant, stating that the "defendant shall disclose to the government no later than 15 business days before trial" the same required disclosures. *Id.* As is apparent, the Government and defense obligations are mirror images, and the disclosure dates are set with reference to the trial date.

Both Paragraphs 5 and 8 concluded by providing a mechanism by which the parties could request an extension to the expert deadline: "In an appropriate case, and for good cause shown, either party may move the Court for an Order requesting earlier or later disclosure of expert witness notice and summaries." *Id.*

On December 3, 2025, a grand jury returned a true bill on a slightly narrowed superseding indictment. The defendant was arraigned on the superseding indictment on December 10. During that hearing, the Court granted the defendant's motion for a trial continuance and set expert disclosures for January 7. The Court subsequently issued a written order setting new trial deadlines for pretrial motions, the pretrial conference, the jury questionnaire, jury instructions, voir dire, the

3

verdict firm and witness lists. ECF No. 57, Dec. 10, 2025 Order. The order was silent, however, as to expert disclosures.

On December 12, the Government emailed chambers seeking to clarify several scheduling points, including the date for expert disclosures. The Government noted that the discovery order set expert disclosures 15 business days prior to trial, which would be January 2, and sought to confirm that the Court intended to set the new expert disclosure deadline for January 7. Chambers responded confirming that the expert disclosure date was January 7, and noted "the discovery order is so modified." Ex. 6, December 12 Email. Defense counsel was copied on this email, and he responded the same day confirming his receipt and voicing no objections. The Government provided a copy of this email exchange to additional defense counsel on December 31, specifically flagging the January 7 expert disclosure date. Defense counsel at that point made no suggestion that the date was incorrect.

On January 9, 2026, following an in-court hearing on several matters, the Court issued a clarifying Order regarding trial deadlines. Regarding expert disclosures, that Order stated the "Government's deadline to make the expert disclosures outlined on page 3 of the Discovery Order (DKT. 31) was January 7, 2026, unless the expert testimony is to be offered in response to a previously noticed expert of a defendant." ECF No. 78, January 9, 2026 Mem. Op. and Order, p. 22. The Order was silent, however, as to the due date for the defendant's expert disclosure.

A day prior to the Court issuing its clarifying order, on January 8, Ms. Collins emailed the Government and stated that she planned to "notice an expert but had not yet signed them onto the case yet given the tight turn around" and asking the Government to "let us know if you have issues with that." Ex. 3, January 8, 2025 Email. The government responded that, if and when defense counsel provided a disclosure that met the Discovery Order and Rule 16 disclosure standards, it

would consider it in due course. The government noted that the disclosure deadline had been set for a month and thus did not believe that there was a tight turnaround that would justify an untimely disclosure.

On Friday, January 9, Ms. Collins emailed the expert notices at issue. *See* Ex. 1, Sotak Expert Notice; Ex. 2, Miller Expert Notice. In the body of the email, Ms. Collins apparently sought to excuse the late disclosure, writing, "As an aside, it appears it was only the government's expert notice due January 7 (per the Court's order form today)." Ex. 4; Jan. 9, 2026, Email. The Government responded to note its objection and disagreement with any suggestion that the defense expert disclosure was timely. Ms. Collins subsequently responded and stated for the first time her belief that the expert disclosure deadline for defense counsel was January 9, 2026. *See* Ex. 5, Jan. 9, 2026 Email.

### 3.  The Sotak and Miller Disclosures

The January 9, 2026, Sotak and Miller expert disclosures are each a little more than a page in length. Counsel recites the Rule 16 standard, and then states in relevant part:

> We are still in the process of retaining experts and will supplement our disclosure accordingly.
>
> We will offer an expert in forensic accounting. Carey Miller is *one of the possible forensic accounting experts*. Mrs. Miller's qualifications, publications from the previous 10 years, and testimony from the previous 4 years are provided within her curriculum vitae, which is attached.
>
> Mrs. Miller has *not yet reviewed any substantive materials and therefore does not have conclusions to offer at this time*. However, we expect her expert testimony to include discussion about the flow of funds, including the collateralization of investments against precious metals, discussion about Mr. Muhammad's business activities, including the operation of buying and selling precious metals and the structure of investments, and discussion of any relevant background information. . . .
>
> In forming the expert opinions, Mrs. Miller may review bank records, business records, and other relevant materials available to her in discovery or as a result of

investigation to trace the flow of funds and otherwise provide insight into the operations of Mr. Muhammad's business.

Ex. 2 (emphasis added). Mr. Sotak's "disclosure" is a carbon copy with his name substituted for Mrs. Miller's and other minor changes. Included after each "disclosure" are Mr. Sotak and Mrs. Miller's resumes. As of filing, the Government has received no additional disclosures identifying any of the purported experts' opinions or the bases for those opinions.

## II.      **The Law**

The proponent of expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) "Trial courts have considerable discretion to determine whether to admit expert testimony." *United States v. Iskander*, 407 F.3d 232, 238 (4th Cir. 2005) (excluding a portion of defense expert testimony, who was offered to testify as to irrelevant tax issues).

Rule 16 echoes the Discovery Order, and requires that the defendant disclose:

- a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;

- the bases and reasons for them;

- the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition

Federal Rules of Criminal Procedure, Rule 16.

Even if the proponent of the expert has satisfied the requirements of Rule 16, the proffered testimony must still meet certain basic criteria. *See* Fed. R. Evid. 702. As the Supreme Court explained in *Daubert v. Merrell Down Pharmaceuticals*, the district court must serve as a "gatekeeper," who "ensur[es] that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand." 509 U.S. 579, 597 (1993). That is, the Court must ask "whether the expert is proposing to testify to (1) scientific [or specialized] knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id*. at 592. These requirements are echoed in Rule 702 of the Federal Rules of Evidence, which provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. Rule of Evid. 702 (emphasis added).

Notably, these guardrails have been put in place because allowing inappropriate expert testimony is understood to unduly and inappropriately influence the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quotation marks and citation omitted). As the Fourth Circuit's has repeatedly admonished:

> Our insistence on district courts' compliance with Rule 702's plain gatekeeping requirement stems not from an arbitrary adherence to a procedural formality. Rather, because Rule 702 grants experts wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, [e]xpert evidence can be both powerful and quite misleading. As such, the importance of [the] gatekeeping function cannot be overstated.

*Sardis v. Overhead Door Corp*., 10 F.4th 268, 283 (4th Cir. 2021) (internal citation and quotation marks omitted).

Thus, expert testimony is not admissible where it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North*

*Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). Expert testimony therefore also should be excluded when it has "the potential of confusing the jury and diverting its attention from its task of assessing the adequacy of the prosecution's evidence on the issue of guilt." *United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996).

III.    **Argument**

**1.  The Defendant's Disclosure Is Untimely and Grossly Inadequate**

The Discovery Order set a plain deadline for the disclosure of expert testimony—15 business days prior to trial, which was January 2, 2026. However, in its oral order, subsequently confirmed via email, the Court clarified that expert disclosures were due on January 7, 2026. Notwithstanding the Discovery Order, which had a clear, parallel structure with the same due dates for expert disclosures for the Government and defense counsel, defense counsel now claims that only Government disclosures were due on January 7. Instead, citing only defense counsel's supposed assertions, the defendant now claims that he had until January 9. There is no basis for this assertion, and the Government believes the Court's January 7 deadline controls.[1] In any event, even as of January 14—seven business days prior to trial and a week past the Court's deadline— the defendant still has not disclosed the experts' opinions or the bases for them.

Parties, including the defendant, are required to disclose their expert opinions in advance because they presumably rely on sophisticated analyses that cannot be readily responded to on the fly by a lay lawyer, and because of the presumed additional weight and authority granted to expert testimony. As a result, the parties are expected to need to obtain their own expert review of an opposing expert's opinions in order to understand them and address them. Such review and

---

[1] In the alternative, even if the defendant does not believe the Court effectively modified the discovery order, then the discovery order's date of January 2 (15 business days prior to trial) would be controlling. There is no basis for a January 9 due date.

response takes time. The untimeliness of the defendant's expert disclosure denies the Government the opportunity to meaningfully review and respond to the purported expert testimony.

Moreover, if the defendant had truly wanted to extend the filing deadline, consistent with the Court's discovery order, he could have moved the Court and shown good cause as to why it an extension was necessary and appropriate. He chose not to so. Instead, the Government is left to parse potential testimony from a facially insufficient notice.

Even putting aside the fact of the disclosures' untimeliness, the disclosures do not even facially meet the requirements of the Discovery Order, Rule 16, or Rule 702. Defense counsel has not actually identified who is testifying. As they write, "Carey Miller is one of the possible forensic accounting experts," and "Andrew Sotak is one of the possible forensic accounting experts." Ex. 1, Sotak Discl. at 1; Ex. 2, Miller Discl. at 1. Are they both testifying or only one? The Government presumes that only one of the purported experts will testify, as both would be redundant and duplicative, but it is not clear based on the disclosure.

Even more unhelpfully, defense counsel has set forth broad topic areas that they may testify about but not the actual content of their testimony, writing for each:

> [W]e expect [his/her] testimony to include discussion about the flow of funds, including the collateralization of investments against precious metals, discussion about Mr. Muhammad's business structure, including the operation of buying and selling precious metals and the structure of investments, and discussion of any relevant background information.

Ex. 1, Sotak Discl. at 1; Ex. 2, Miller Discl. at 1. Likewise, it identifies sources that *may* be the bases for any future opinions, but does not identify those sources with any specificity. These disclosures thus lack any detail—much less the required detail—as to the substance of their opinions and the basis of their opinions. Both are required by the Discovery Order and Rule 16, and with good reason. Otherwise, the Government has no basis to assess the validity of the opinions

or to determine whether the testimony is accurate, relevant, based on reliable principles and methodologies, helpful to the trier of fact, and within the expert's purported area of expertise.

Additionally, there is a real concern that the defense intends to use "expert testimony" as a backdoor for the defendant's testimony. Experts are permitted to rely upon hearsay, but only if "experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008). Self-serving hearsay by a defendant does not qualify, which is why courts commonly decline to permit experts to testify as to such matters. *See, e.g.*, *United States v. Tipton*, 269 F. App'x 551, 560 (6th Cir. 2008) (finding no error to exclude expert's testimony based solely on self-serving statements because "[i]t appears likely in this case that the defense was simply attempting to use [the expert] as a 'conduit' for the admission of the Defendants' otherwise inadmissible hearsay statements. . . ."); *see also* Fed. R. Evid. 801(d)(2) (opposing party's statement must be offered by opposing party). This makes intuitive sense: one of the key goals of expert testimony is to ensure that it is based on *reliable* information. Self-serving hearsay is not that. But the Government cannot evaluate whether the experts are inappropriately relying on such evidence without knowing their opinions and the bases for them.

These concerns are not theoretically. For example, it is not clear why or how either noticed forensic account would be qualified to testify about "the collateralization of investments against precious metals"[2] or about the defendant's "business structure, including the operation of buying and selling precious metals and the structure of investments." Both Mrs. Miller and Mr. Sotak appear to have traditional accounting backgrounds with no direct knowledge of the defendant's

---

[2] The Government notes that this phrase is highly similar to the meaningless phrases that the defendant often used in his communications with investors as he attempted to mislead them about the status of their investments, further increasing the Government's concerns about the expert's reliance on the defendant's self-serving and inaccurate hearsay.

business or particular experience in the precious metals industry. Yet both have been noticed as potentially testifying on the matters, which may be an attempt to avoid having to call the defendant to testify about his business operations and his intentions. This would be improper. The Government cannot fully assess this risk without an adequate disclosure.

Defense counsel has tacitly acknowledged that the "disclosure" is anything but, noting that neither Mrs. Miller nor Mr. Sotak has "yet reviewed any substantial materials and therefore does not have conclusions to offer at this time." Ex. 1, Sotak Discl. at 1; Ex. 2, Miller Discl. at 1. In sum, defense counsel has provided after the disclosure deadline a letter essentially indicating its intent to possibly provide a future disclosure. The rules plainly require more.

Accordingly, consistent with controlling precedent, the Court should reject the defendant's request to let the witnesses testify as experts.

### 2. Some of the Proposed Testimony Does Not Require an Expert

The defense has noticed broad categories of testimony that do not appear to require expert testimony. These categories include testimony regarding the "flow of funds" and a discussion of Muhammad's business activities.

Regarding the first topic, forensic accountants, commonly provide lay testimony to trace funds through bank accounts and to conduct basic computations, such as a net profit analysis. For example, in *United States v. Fenner*, an FBI forensic accountant was called to summarize "over tens of thousands" of pages of bank records for the defendant's businesses and to "trace[] the flow of money through bank accounts, expense sheets, and emails." 142 F.4th 510, 516 (7th Cir. 2025). Over the defendant's objection, the District Court permitted the accountant to testify without being qualified as an expert about the monetary flows and how much money the defendants had earned

11

from the schemes, among other things. The Seventh Circuit upheld the decision, and provided an

extensive explanation as to why expert testimony was *not* required for lay accountant testimony:

> Deploying basic arithmetic of addition and subtraction, even repeatedly, is often within the realm of lay, not expert, testimony. . . While the "volume of math" [the accountant] performed was large, the method was simple. In forming her opinions that [Defendant 1] was funding [Defendant 2's] bank account, she noted [Defendant 1] never paid cash for the vehicles at auction, and [Defendant 1] and [Defendant 2] raked in over one million dollars through the scheme. This was [the accountant] performing rudimentary math. . . . Her testimony, cabined to this particular investigation, required attention to detail; it did not require expertise beyond the ken of a lay person.

*Id.* at 518. The Seventh Circuit's decision is consistent with other circuits, and applied here, it is

clear that the defendant does not need one, let alone two experts, to provide testimony about the

"flow of funds." *See*, *e.g*, *United States v. Davis*, 53 F.4th 833, 849 (5th Cir. 2022) (same); *United*

*States v. Shaw*, 891 F.3d 441, 454 (3d Cir. 2018) ("His testimony was based on subtraction, not

'scientific, technical, or other specialized knowledge within the scope of Rule 702'"); *Ryan Dev.*

*Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (upholding

admission of accountants' testimony that relied on "basic arithmetic, personal experience, and no

outside expert reports in calculating lost income and other claims for coverage"); *United States v.*

*Dukes*, 242 F. App'x 37, 49 (4th Cir. 2007) (holding that district court properly admitted testimony

of accountant with the Securities and Exchange Commission, called by the Government as a fact

witness to present financial summary charts); *United States v. Mosby*, 626 F. Supp. 3d 847, 864

(D. Md. 2022), aff'd, 143 F.4th 264 (4th Cir. 2025).

Nor is it apparent that any testimony about the defendant's business structure or activities

requires expert testimony. The Government believes that subject can be addressed through lay

12

testimony, particularly from an individual with first-hand knowledge.[3] No explanation has been provided as to why expert testimony is necessary.

IV.    **Conclusion**

The defendant has failed to comply with his disclosure obligations. He has not disclosed in a timely fashion who he intends to call, their opinions, or the bases for their opinions. Furthermore, many of the categories for which he claims to want to elicit expert testimony do not require expert testimony, and even if they did, his experts do not appear to be qualified to testify on at least some of those matters. For all of these reasons, which the Government may supplement in an additional filing if the defendant provides a more fulsome disclosure, the Court should exercise its gatekeeping function and not allow the disclosed witnesses to testify as experts.

Respectfully submitted,

By:  _____/s/_____

Jack Morgan
Zoe Bedell
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3779
Email: Jack.Morgan@usdoj.gov

---

[3] The Government notes that it has concerns about Mrs. Miller's and Mr. Sotak's ability to provide lay testimony about the defendant's "business activities" as defined in the expert disclosure. Given the information available and the fact that neither Mrs. Miller nor Mr. Sotak appear to currently have *any* knowledge of the defendant's business, the Government reserves the right to object to Mrs. Miller's and Mr. Sotak's potential lay testimony once its scope, content, and basis become clearer.